## J. BERMUDEZ v. UNION BANK OF LOUISIANA.

The stipulation in bonds given to the Union Bank, that in case of non-payment at maturity, the borrower is to pay ten per cent interest after that time, is obligatory, and the party will be condemned to pay it.

Where a stockholder in the Union Bank, in addition to the usual amount loaned on stock, borrows fifteen per cent on his stock, it will be regarded as a stock loan.

APPEAL from the Fifth District Court of New Orleans, *Buchanan,* J. *Benjamin* and *Micou,* and *C. Roselius,* for plaintiff. *H. R. Dennis,* for defendant. *Eustis,* C. J., declined sitting in this cause. The other judges delivered separate opinions.

SLIDÈLL, J. This litigation arises out of two obligations, executed by *Bermudez* in favor of the Union Bank. One of them, is for the loan made to *Bermudez,* as a stockholder, under the 31st section of the charter. The other, is for an additional loan. Both were secured by mortgage.

The first question presented for our consideration is, whether, upon the first obligation, the bank is entitled to ten per cent, after maturity, on the entire principal. This obligation is in the form universally adopted in such cases by the bank since its establishment. It's tenor is as follows:

" Be it known, that I have, this day, received from the Union Bank of Louisiana, the sum of nine thousand nine hundred and forty dollars, being the whole of my credit as a stockholder of two hundred and eighty-five shares of said institution, which sum I will pay at the banking house in New Orleans, on the first December, 1839, fixed, or renew, according to the provisions of the charter of said bank. The payment of the aforesaid sum of money is secured by a deed of mortgage, passed before *A. Mazureau*, notary public, in and for the parish and city, under date of the 13th day of December, 1838. New Orleans, 1st December, 1838. (Signed) J. BERMUDEZ."

The mortgage, by which this obligation is secured, and whose terms must also be considered as incorporated in the obligation, contains the following clause: " If the whole amount of his loan, or any part thereof, shall not be punctually paid, whenever he shall be required so to do by the Board of Directors of the Union Bank of Louisiana, then, and from that moment, this present mortgage, by virtue of the 24th section of the act of incorporation aforesaid, shall bear ten per cent interest per annum ; and the said Union Bank of Louisiana shall have the right to cause to be seized and sold, the said mortgaged premises, in whose hands soever the same may be found."

The 24th section of the charter enacts, that "the mortgages for stock and loans granted, by virtue of this act, shall bear ten per cent interest per annum, after maturity, if not punctually paid."

The 31st section enacts, that " each and every stockholder shall be entitled to a credit, equal to one-half of the total amount of his shares; provided, that as use may be made of such credit, notes or obligations for the amount, so used, shall be furnished, and the interest thereon shall be annually paid in advance ; and the principal shall be paid in equal installments, so that the whole shall be paid at the expiration of twenty years from the passage hereof."

The interpretation which the bank, in its dealings with its stockholders, has uniformly, since its establishment, insisted upon, and which it now invokes, is this, that the stockholder, at the end of the year, should pay the twentieth of the principal, and the annual interest on the balance, in advance, at the rate of seven per cent; and on the fulfillment of this condition, would enjoy the privilege of renewal. But if he fails to fulfill this condition, the whole amount of the loan matures, and is exigible, with ten per cent thereafter, and the mortgaged property may be seized and sold, to enforce payment. The term, says the appellant, was granted only on condition, that you, the stockholder, diminish your indebtedness and pay interest in advance. In not doing so, you weaken the security of the bank ; for your slaves are growing old, your buildings are wearing out, and besides, you deprive the bank of the profits it might make, by using, in its banking business, the money you ought to have paid, and which you seek to keep at seven per cent interest, although you borrowed it at the higher rate of seven per cent discount. Your punctual fellow-stockholders, since the existence of the corporation, have acquiesced in this view of their duty, and have paid their installments and interest, in advance, accordingly; thus contributing to enrich the funds of the bank, in which, when a distribution of profits takes place under the charter, you will claim to be an equal participant.

On the other hand, the appellee contends, that in no event is he bound to pay more than the twentieth at the end of each year; and that even, if he neglects to pay an installment at the end of the year, and to pay the interest on the balance in advance, the balance of the principal is only exigible by installments, and interest on that balance runs only at seven per cent. To charge him ten per cent interest, is to charge him, it is said, a penalty for not having paid what is not due.

We have stated the conflicting pretensions of the parties, but we do not consider it necessary to discuss them at length. This same question was, some years since, considered by this court, after elaborate argument at bar, in the case of the *Union Bank* v. *Guice*, 2d Ann. 250, and was then decided. We are still satisfied with the opinion, for the reasons then stated. But it is proper to add, that, at this late day, when the bank is liquidating its affairs, after having dealt with its stockholders who stand towards each other in the relation of partners, upon that view of their liability during nearly twenty years, we would scarcely be permitted to treat the question as an open one.

The next question presented for our consideration is, whether the bank is entitled to recover more than seven per cent interest, after maturity, upon the other bond. Our conclusion is, that the stipulation for ten per cent interest, after maturity, must be enforced. The subject has been considered in the opinion prepared by Mr. Justice Rost. There has been some difference as to our reasons for adopting this conclusion; but, in the conclusion itself, we all concur.

The only remaining matter is, what credits are to be allowed for alleged payments. It seems to us, there was error in the decree below, in allowing a credit of eight hundred and seventy-five dollars on the 25th June, 1844; and that the view taken, as to that item, by the appellants counsel, is correct. We have also doubts as to the allowance of another item of credit, claimed by the debtor, beyond the amounts credited in the bank's account. As the account has to be reformed, in consequence of the opinion of this court, on the subject of interest, we shall, before expressing a definitive opinion as to the credits claimed, direct a reference to auditors, unless the parties can agree upon a statement.

*January* 26, 1852.—Since the foregoing opinion was read, some days have elapsed, and the parties have not agreed upon a statement. We have concluded to remand the cause, for the purpose of having the question of credits re-examined.

It is therefore decreed, that the judgment of the district court be reversed; and it is further decreed, that this cause be remanded for a new trial, and for further proceedings, according to the legal principles on the subject of interest, stated in the opinion of the court; the appellee paying the costs of the appeal.

ROST, J. The district judge was of opinion, that the additional loan of fifteen per cent on the amount of the stock, was not a stock loan within the meaning of the charter, and that ordinary mortgage loans do not come within the penalty attached by the 24th section to a default, but under the dispositions of the 9th section, which is the law of the corporation in regard to the rate of interest it may exact. He accordingly reduced the interest on the bond given for that loan to seven per cent. In this, we think there is error.

This loan was reviewed by the board who authorized it, (the defendant being one of them,) as an extension of the stock loan, and we are not prepared to say that it might not be viewed in that light against all the stockholders who availed

themselves of it.   But we will consider the case as one of an ordinary loan on mortgage.

The provision of the 24th section is, that the mortgages for stock and loans granted by virtue of the charter, shall bear ten per cent interest per annum after maturity, if not punctually paid.

The expressions used are extremely ambiguous; but we are of opinion, that the interpretation by which the section is extended to all loans on mortgage, is the only one by which effect can be given to every part of it, and that it is most consonant with reason.

The subscription for stock is not to be paid up; there is, therefore, no such thing as the maturity of the stock itself, and if the literal sense is to be followed, the first part of the section is entirely without meaning.   But a reasonable meaning is easily found, if the letter of the law be disregarded, and the intention of the Legislature ascertained.   The charter provides that every stockholder shall be entitled to a loan of fifty per cent on his stock, and contains no express provision that any mortgage, besides the stock mortgage, shall be given to secure that loan.   The Legislature evidently viewed the stock mortgage as the security for the stock loan, and they must have meant by the maturity of the stock, the maturity of the installments of the loan made upon it, or they meant nothing at all; a conclusion to which a court of justice cannot come.

We must believe that the first part of the 24th section applied to stock loans, and that the loans subsequently mentioned, are the ordinary mortgage loans.   The two together, constitute the mortgages granted by virtue of the charter, to which this section has express reference.

This construction is corroborated by other dispositions of the charter.   Sections 26 and 27 provide, that the right of the bank to cause to be seized and sold, property mortgaged to them, shall remain unimpaired by respites obtained, or voluntary surrenders made by their debtors.   Although these sections would seem to have reference to ordinary mortgages only, the board has uniformly claimed and enjoyed the privilege which they give in cases of loans on stock.

So, the section which authorizes married women to bind themselves with their husbands, though not including in terms stock loans and mortgages, was clearly intended to apply to them.

But if it were true, that the 24th section was originally susceptible of a different interpretation, it has been so understood by the stockholders, the board of directors, and the customers of the bank, during the entire existence of the charter; and this understanding of it, has materially increased the profits soon to be divided between the plaintiff and the other stockholders.   To disregard now that interpretation, would be contrary to justice and subversive of all rules of sound construction.

PRESTON, J.   I concur in the opinion delivered by Judge Rost.